UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES,<br>*Plaintiff*,<br><br>v.<br><br>WILFREDO GUTIERREZ,<br>*Defendant.* | No. 3:16-cr-114 (VAB) |

**RULING ON MOTION FOR COMPASSIONATE RELEASE**

Wilfredo Gutierrez ("Defendant") has moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Mot. for Compassionate Release, ECF No. 489 (Sept. 28, 2020) ("Def.'s Mot."); Mem. in Supp. of Emergency Mot. for Immediate Release, ECF No. 490 (Sept. 28, 2020) ("Def.'s Mem."). The United States (the "Government") opposes his motion. Mem. in Opp'n, ECF No. 496 (Oct. 9, 2020) ("Gov't Opp'n").

For the reasons set forth below, Mr. Gutierrez's motion for compassionate release is **DENIED**.

**I.     BACKGROUND**

On November 22, 2016, Mr. Gutierrez pled guilty to Count Two of the Indictment charging him with conspiracy to possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(i). Plea Agreement, ECF No. 150 (Nov. 22, 2016).

On March 16, 2017, this Court sentenced Mr. Gutierrez to a term of imprisonment of 180 months, a term of five years of supervised release, and a special assessment of $100. Min. Entry, ECF No. 244 (Mar. 16, 2017); J., ECF No. 265 (Apr. 6, 2017). At the time of sentencing, Mr. Gutierrez was in the custody of the Connecticut Department of Corrections as a result of a violation

1

of supervised release from an earlier state conviction. Revised Presentence Report, ECF No. 245, ¶ 2 (Mar. 23, 2017) ("PSR").

On February 14, 2020, the Court amended its judgment and ordered that Mr. Gutierrez's 180-month sentence would be served concurrent to his state sentence. Am. J., ECF No. 460 (Feb. 14, 2020).

On Sept. 28, 2020, Mr. Gutierrez moved to modify his sentence, requesting he be released to home confinement under a treatment plan. *See* Def.'s Mot.; Def.'s Mem.

On October 9, 2020, the Government opposed Mr. Gutierrez's motion. Gov't Opp'n.

On October 14, 2020, Mr. Gutierrez filed a supplemental memorandum in support of his motion for compassionate release. Mem. in Support, ECF No. 497 (Oct. 14, 2020).

On October 14, 2020, the Court held a telephonic motion hearing. Min. Entry, ECF No. 498 (Oct. 14, 2020).

## II.     STANDARD OF REVIEW

A court may modify a term of imprisonment on compassionate release grounds in two circumstances: (1) "upon motion of the Director of the Bureau of Prisons [("BOP")];" or (2) "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020) ("In December 2018, as part of the First Step Act, Congress worked a change to th[e] rule of long standing" that a court could only modify a sentence upon motion from the Bureau of Prisons. "A court may now consider a motion for compassionate release made by a defendant

who has exhausted his administrative remedies by petitioning the Director of the BOP to make such a motion, assuming the Director fails to act on the inmate's request within thirty days[.]").

A court may only grant such a modification if it finds that "extraordinary and compelling reasons warrant" release. In determining whether to grant a motion to modify a sentence, a court must also consider the factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A).

### III.    DISCUSSION

Section 3582(c)(1)(A) authorizes courts "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release." *United States v. Brooker*, No. 19-3218-CR, -- F. 3d. --, 2020 WL 5739712, at *7 (2d Cir. Sept. 25, 2020) ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."); *see United States v. Gonzalez*, No. 3:15-cr-00223 (MPS), 2020 WL 5793304, at *1 (D. Conn. Sept. 29, 2020) ("[B]ecause [Mr.] Gonzalez – and not the [BOP] – brings the instant motion, [the Court is] not bound by the Sentencing Commission's outdated policy statement applicable to Section 3582(c)(1)(A) . . . , which the Second Circuit recognized as only applying to motions for sentence reduction brought by the BOP.") (citing *Brooker*, 2020 WL 5739712, at *8) (internal citations omitted).

Mr. Gutierrez moves the Court to "grant a reduction in his sentence to time served, with a combination of home confinement, and implementation of a treatment plan as conditions of supervised release" because Mr. Gutierrez's "medically vulnerable status" constitutes an "extraordinary and compelling reason[]" to warrant such a reduction. Def.'s Mem. at 19. Specifically, Mr. Gutierrez argues that he suffers from several medical conditions, including "morbid obesity," *id.* at 6-8, "untreated and uncontrolled" hypertension, *id.* at 9, "fatty liver," or

3

"steatosis," *id.* at 10, and "kidney stones," *id.* at 10-11, and that "[t]he worsening pandemic in prison settings, in conjunction with [these conditions]," supports a finding of extraordinary and compelling reasons, *id.* at 11. Mr. Gutierrez argues that "[a]lthough the BOP [("Bureau of Prisons")] is reporting no current cases of COVID-19 at [his facility] [FCI] Ray Brook," the facility may be "avoiding more intense scrutiny by keeping testing low so the full extent of the crisis is not readily apparent," *id.* at 12, and that the lack of positive tests at his facility "does not preclude a finding that a reduction in sentence is warranted," *id.* at 13.

Mr. Gutierrez argues further that although he has served only 50 months of his 180-month sentence, "[a] sentence of time served, the equivalent of a more than 4-year sentence, with an imposition of home confinement, is sufficient to accomplish the goals of sentencing." *Id.* at 14. He argues that at the time of sentencing, the Court "could not have contemplated the circumstances under which Mr. Gutierrez is now serving his sentence, nor does the sentencing purpose of just punishment warrant a sentence that includes unreasonable exposure to dangerous conditions in custody." *Id.* at 15. He notes that since his sentencing, "he has had no disciplinary history while in BOP custody" and "was taking classes to receive his GED, although classes have been put on hold since the pandemic." *Id.*

The Government opposes Mr. Gutierrez's motion, noting that although Mr. Gutierrez "is obese and therefore has a medical condition that places him at an increased risk of severe illness from [COVID]-19, he has not established that he is entitled to a sentence reduction" and further that "[a] reduction in his sentence does not reflect the relevant § 3553(a) factors, including the seriousness of the offense and respect for the law," as well as that "[Mr.] Gutierrez remains a danger to the community." Gov't Opp'n at 7.

Specifically, the Government argues with respect to whether Mr. Gutierrez has established extraordinary and compelling reasons for release that while Mr. Gutierrez's obesity places him at heightened risk of severe illness from COVID-19, "none of [Mr. Gutierrez's other medical conditions] fall into that same category." *Id.* The Government also argues that because FCI Ray Brook has reported only one active inmate case and no staff cases of COVID-19 and has quarantine and testing procedures in place, the facility "appears to be containing the virus exceedingly well." *Id.* at 8-9.

With respect to the § 3553(a) factors, the Government argues that these "weigh heavily against the requested reduction" because Mr. Gutierrez's crime was "indisputably serious," as he "was not just a bit player but the leader of the [drug-trafficking] organization," and Mr. Gutierrez's "criminal conduct continued while he was on community release, while he was in custody serving time for drug trafficking, and during the short intervals when he was at liberty." *Id.* at 10. The Government argues that a denial of compassionate release is warranted given Mr. Gutierrez's "lengthy criminal history and violations of supervised release," which "show a serious risk of recidivism and danger to the community." *Id.* at 11.

The Court will address each of the relevant factors in turn.

1. **Exhaustion**

Normally, under 18 U.S.C. § 3582(c)(1)(A), a court may not modify or reduce a defendant's sentence on that defendant's motion when the defendant has not exhausted his administrative remedies by either (1) appealing a failure of the BOP to bring such a motion on the defendant's behalf or (2) the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility.

5

The parties agree that the exhaustion requirement has been met. The Government agreed that Mr. Gutierrez filed a request for compassionate release with the Warden at FCI Ray Brook on May 28, 2020. Gov't Opp'n at 6; *see also* Def.'s Mem. at 4. His request was denied on June 3, 2020, because Mr. Gutierrez "[did] not meet the criteria" used by the BOP in considering compassionate release motions. Def.'s Mem. at 4; Gov't Opp'n at 6. Mr. Gutierrez renewed his request on June 4, 2020, and it was again denied on June 7, 2020. Def.'s Mem. at 5; Gov't Opp'n at 6–7. The parties further agree that the motion is timely. Def.'s Mem. at 5; Gov't Opp'n at 7.

Given that more than thirty days have passed since Mr. Gutierrez submitted his request to the Warden, the Court finds the exhaustion requirement has been met and that Mr. Gutierrez's motion is properly before the Court.

### 2. Extraordinary and Compelling Reasons

Since the outbreak of the COVID-19 pandemic, numerous courts within this Circuit have held that a defendant's pre-existing health conditions in combination with the increased risks of COVID-19 in prisons constitute "extraordinary and compelling reasons" warranting relief. *See, e.g.*, *United States v. Delgado*, 457 F. Supp. 3d 85, 2020 U.S. Dist. Lexis 84469, at *7 (D. Conn. Apr. 30, 2020) (granting compassionate release where the defendant had a BMI of 40.2, finding that his "severe obesity and sleep apnea put him at increased risk should he contract COVID-19"); *United States v. Daugerdas*, -- F. Supp. 3d --, 2020 WL 2097653, at *3 (S.D.N.Y. 2020) (defendant serving a 180-month term of imprisonment and incarcerated at a facility with no reported cases of COVID-19; the district court found that his underlying health conditions—Type II diabetes, obesity, hypertension, and high cholesterol—and the risk of COVID-19 in prisons generally constituted an extraordinary and compelling reason, but did not ultimately grant compassionate release); *United States v. Morales*, No. 3:19-cr-121 (KAD), 2020 WL 2097630, at *3 (D. Conn.

6

May 1, 2020) (recognizing district courts have found that "[a]sthma is a condition that places a person at increased risk for serious complications, or even death, if the person contracts COVID-19[,]" and "creates a[n] extraordinary and compelling reason for sentence reduction"); *United States v. McCarthy*, 453 F. Supp. 3d 520, 527 (D. Conn. 2020) ("[Mr.] McCarthy is 65 years old and suffers from COPD, asthma, and other lung-related ailments . . . . The defendant's age and medical condition, taken in concert with the COVID-19 public health crisis, constitute an extraordinary and compelling reason to reduce [Mr.] McCarthy's sentence.").

Mr. Gutierrez argues that his morbid obesity "is unquestionably an extraordinary and compelling reason that warrants a reduction in sentence." Def.'s Mem. at 6. He cites studies about how COVID-19 impacts people in several ways, including that "people with obesity are more likely to have respiratory disease, cardiac disease, and/or compromised immune system[s] increasing their risk for disease" and that they may also be compromised by "challenges in diagnosis and treatment caused by the physical effects of their obesity." *Id.* at 7. He also argues that, based on recent studies, "'obesity itself' is an independent factor that increases a person's risk of severe COVID-19, rather than the associated health risks of obesity," and that "those with a BMI of 45 are 'more than four times [more] likely to die than patients of normal weight, with the risk most striking among men and those under 60.'" *Id.*

He argues further that he suffers medical conditions beyond obesity, including "untreated and uncontrolled" hypertension, "fatty liver" and "kidney stones." *Id.* at 9-10. Though Mr. Gutierrez concedes that the CDC does not specifically list "fatty liver" or "kidney stones" as conditions that increase a person's risk for suffering acutely from COVID-19, he argues that these

7

conditions present an "indirect risk" because the CDC does list generic "liver disease" and "chronic kidney disease" as mitigating conditions. *Id.* at 10-11.

The Government agrees that Mr. Gutierrez's obesity "places him at increased risk of severe illness from [COVID]-19," but argues that none of Mr. Gutierrez's other proffered medical conditions qualify as extraordinary and compelling reasons for release. Gov't Opp'n at 7. The Government argues that (1) according to Mr. Gutierrez's Presentence Report, he in 2017 "stated that he does not suffer from any medical issues and is not currently prescribe[d] medication"; (2) his medical records contain "no mention of high blood pressure or [a] hypertension diagnosis and [Mr.] Gutierrez is not prescribed medication for this ailment"; (3) his medical records contain only one reference to an "incidental finding of fatty liver," and in any event, this is not a CDC-recognized risk factor; and (4) his medical records contain no reference to chronic kidney disease, and kidney stones are also not a CDC-recognized risk factor. *Id.* at 7-8. The Government also notes that FCI Ray Brook has reported only one current active inmate case and no staff cases of COVID-19. *Id.* at 8.

Mr. Gutierrez's medical records show that as of 2019, he had a Body Mass Index ("BMI") of 54.3, Medical Records, ECF No. 492, at 9 (Sept. 28, 2020), and the parties agree that Mr. Gutierrez's morbid obesity places him at higher risk of suffering severe complications should he contract COVID-19, Def.'s Mem. at 3; Gov't Opp'n at 7. His medical records, however, do not contain any medical diagnosis of hypertension and include blood pressure readings that fall in the

hypertension range,[1] *see* Medical Records at 22-23, 72, 79-80, and out of the hypertension range, *see id.* at 31 (reflecting a blood pressure reading of 104/68).

Mr. Gutierrez's medical records also reflect that on five separate occasions, he denied a history of hypertension. *See id.* at 11, 16, 20, 26, 53. Mr. Gutierrez's medical records show further that at a 2018 doctor's visit, he was diagnosed with a kidney stone and, following a CT scan, with an "incidental finding of fatty liver." *Id.* at 75. Neither the kidney stone nor Mr. Gutierrez's "fatty liver" are elsewhere mentioned in his records.

The Court has previously found that obesity, taken alone, may constitute an extraordinary and compelling reason for release. *See United States v. Bruno*, No. 18-cr-00061 (VAB), ECF No. 137 (D. Conn. Aug. 3, 2020). There, however, the Government initially argued that the defendant's obesity did not constitute an extraordinary and compelling reason for release, it later revised its position and instead relied on the § 3553(a) factors. Here, however, the Government has made no such revision. Instead, the Government argues that other courts in this District have found that a defendant's obesity alone is insufficient to qualify as extraordinary or compelling where the § 3553(a) factors do not merit release. Gov't Opp'n at 11-12 (citing *Gonzalez*, 2020 WL 5793304, at *4.

*Gonzalez* is instructive, although not dispositive. There, the defendant, who had a BMI of 34.6 and thus qualified as obese, argued that he also suffered from several other purported risk factors, including the removal of a lymph node, hemoglobin tests indicating an increased risk of diabetes, past bronchitis, and a history of steroid treatments, which could be immunosuppressive. *Id.* at *2-3. The court concluded that because (1) the CDC does not list lymph node removal as a risk factor; (2) the defendant had not identified an actual diagnosis of diabetes, and his medical

---

[1] *See* Am. Heart Ass'n, High Blood Pressure, https://www.heart.org/en/health-topics/high-blood-pressure (last accessed Oct. 14, 2020).

records indicated, both before and after the hemoglobin tests he identified, that he denied having diabetes; (3) the defendant's bronchitis had been successfully treated; and (4) the defendant had provided no evidence suggesting his steroid treatments could have an immunosuppressive effect, the defendant had not proven he faced an increased risk of severe illness from COVID-19 based on these factors. *Id.* at *3. The court thus considered obesity as the only potential risk factor and ultimately concluded that "that condition alone is insufficient to qualify as an 'extraordinary' or 'compelling' reason . . . when the factors in 18 U.S.C. § 3553(a) are taken into account." *Id.* at *4.

The Court recognizes that here, similar to *Gonzalez*, there exist significant factual disputes between the parties as to (1) whether Mr. Gutierrez in fact suffers from hypertension and (2) whether Mr. Gutierrez's diagnoses of a kidney stone and "incidental finding of fatty liver" constitute conditions that would indirectly or directly increase Mr. Gutierrez's risk of suffering acutely from COVID-19. As was the case in *Gonzalez*, Mr. Gutierrez's medical records show that he has both repeatedly denied and has no actual diagnosis of hypertension. *See* Medical Records at 11, 16, 20, 26, 53. Similarly, Mr. Gutierrez concedes that the CDC does not list either kidney stones or fatty liver as conditions increasing a person's risk for suffering acutely from COVID-19. Def.'s Mem. at 10–11.

Courts in this Circuit are divided as to whether obesity alone may constitute an extraordinary and compelling reason warranting compassionate release, "especially [where] there was no indication that obesity was not being handled adequately at the inmate's institution." *United States v. Colon*, No. 3:97-cr-48 (SRU), 2020 WL 6049215, at *6 (D. Conn. Oct. 12, 2020); *compare Bruno*, No. 18-cr-00061 (D. Conn. Aug. 3, 2020); *United States v. Dasilva*, No. 15-cr-95 (AJN), 2020 WL 5764286 at *2 (S.D.N.Y. Sept. 28, 2020) ("Mr. Dasilva's obesity alone suffices to satisfy the first prong of the analysis, even without reaching Mr. Dasilva's other health

10

conditions."); *with United States v. Vadakin*, No. 3:9-cr-010 (JBA), 2020 WL 4818440, at *4 (D. Conn. Aug. 17, 2020) (denying compassionate release where, "[w]hile Defendant's obesity does increase his risk of severe illness, it is unclear if he has any other compromising conditions that would predispose him to significant risk"); *United States v. Kerrigan*, No. 16-cr-576 (JFK), 2020 WL 2488269, at *3 (S.D.N.Y. May 14, 2020) (defendant failed to articulate an extraordinary and compelling reason where he was "significantly younger than 65 years old, and while obesity . . . may indicate 'high risk' according to the CDC, none of the other medical issues [asserted] indicate that he suffers from other primary risk factors looked to by courts, such as asthma, diabetes, or immunocompromization"); *United States v. Lindo*, No. 15-cr-854 (SHS), 2020 WL 5038766, at *1 (S.D.N.Y. Aug. 26, 2020) (denying compassionate release where the defendant did not suggest "that he is receiving inadequate treatment for" his medical conditions, "and if preexisting medical conditions such as obesity were the end of the compassionate-release inquiry, every inmate who suffers from a COVID-19 risk factor would be entitled to release . . .").

Moreover, "in determining whether 'extraordinary and compelling reasons' warrant a prisoner's early release, courts routinely consider the status of coronavirus infections at the particular institution where the defendant is housed." *Colon*, 2020 WL 6049215, at *7 (collecting cases). Mr. Gutierrez concedes that "the BOP is reporting no current cases of COVID-19" at his facility, although he argues that this is due to a low testing rate there.[2] Def.'s Mem. at 12 (citing Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus). Even if testing rates are low, without more, it seems clear to the Court that "while the situation [at FCI Ray Brook] is not ideal, neither is it dire, unlike that of many BOP facilities. Indeed, the risk of contracting

---

[2] As of October 21, 2020, there was one active inmate case at FCI Ray Brook. Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus (last visited October 21, 2020).

11

COVID-19 is present outside prison as well." *United States v. Cleveland*, No. 12-cr-6109 (FPG), 2020 WL 5651607, at *3 (W.D.N.Y. Sept. 23, 2020).

In any event, because Mr. Gutierrez's motion fails for other reasons, the Court need not definitively resolve whether Mr. Gutierrez has failed to demonstrate an extraordinary and compelling reason for a sentence reduction.

### 3. Section 3553(a) Factors

After establishing that extraordinary and compelling reasons exist, "Section 1B1.13 of the Guidelines further provides that a court may reduce a term of imprisonment only if the court determines that '[t]he defendant is not a danger to the safety of any other person or to the community[,]'[ ] and only after considering the factors listed in 18 U.S.C. [§] 3553(a)." *McCarthy*, 453 F. Supp. 3d at 526.

Mr. Gutierrez argues that at sentencing, this Court "could not have contemplated the circumstances under which Mr. Gutierrez is now serving his sentence, nor does the sentencing purpose of just punishment warrant a sentence that includes unreasonable exposure to dangerous conditions in custody." Def.'s Mem. at 15. He argues further that "he has no disciplinary history while in BOP custody and, as suggested by [the] Court at sentencing, [he] was taking classes to receive his GED." *Id*. He also argues that his medical vulnerability and the COVID-19 pandemic have "increased and magnified the deterrent effect" of his incarceration, "rendering time served a sufficient sentence." *Id*. at 17. He proposes that the Court release him to his mother's home in Florida, which he argues will provide him "a fresh start, away from his former communities." *Id*. at 18.

The Government argues that Mr. Gutierrez's criminal conduct was "indisputably serious" because "[Mr.] Gutierrez ran a drug[-]trafficking organization that distributed kilogram quantities

of heroin over a significant period of time," and he "was not just a bit player but the leader of the organization." Gov't Opp'n at 10. The Government also notes that Mr. Gonzalez's sentence was already below the Guidelines range. *Id.* n.3. The Government argues further that Mr. Gutierrez's "criminal conduct continued while he was on community release, while he was in custody serving time for drug trafficking, and during the short intervals when he was at liberty," *id.* at 10, noting that less than four months into his community release from prior racketeering and drug trafficking convictions, he was returned to custody for violating parole and, less than a month later, was recorded on telephone calls directing other members of the organization in connection with the heroin operation leading to the current Indictment. *Id.* at 10-11. In the Government's view, "[b]ased on his complete lack of respect for the law, his persistent criminal conduct, and his lack of job prospects, there is scant evidence that [Mr.] Gutierrez will be deterred from reentering the drug trade should he be released early." *Id.* at 11.

The Court agrees.

Here, the § 3553(a) factors weigh against Mr. Gutierrez's release.

Most significantly, Mr. Gutierrez's current term of incarceration stems from a serious drug-trafficking offense, which he committed while under supervision for another crime, specifically, a state term of parole. PSR ¶ 54. At sentencing, Mr. Gutierrez's criminal history category was VI. *Id.* ¶ 55. He has an extensive criminal record and a history of committing serious offenses while under parole or supervised release. *See id.* ¶¶ 39-55. Mr. Gutierrez has "clearly made selling narcotics his life's work." *Id.* ¶ 112; *see also* Sentencing Tr., ECF No. 453 at 32:13-17 (Oct. 1, 2019) (noting that "drug trafficking, unfortunately, seems to be what [Mr. Gutierrez] know[s] and what [he] do[es]").

The Court appreciates the steps that Mr. Gutierrez has taken while incarcerated, such as pursuing his GED and participating in drug-abuse programs, but his sentence must "reflect the seriousness of the offense, . . . and . . . provide just punishment for the offense[.]" 18 U.S.C. § 3553(a)(2)(A). *See United States v. Gamble*, 3:18-cr-0022-4 (VLB), 2020 WL 1955338, at *6 (D. Conn. Apr. 23, 2020) (denying motion for release "because Defendant is ill suited for home confinement because of his lengthy criminal history and [because] no conditions [of release] could adequately protect the public"); *United States v. Lopez*, 16-cr-317 (PAE), 2020 WL 3100462, at *3 (S.D.N.Y. June 10, 2020) (denying motion for compassionate release where defendant had sixty-six months left of his sentence and "release now, or any time soon, [was] therefore incompatible with the sentence [the original Judge] thoughtfully imposed, even considering the new facts that have emerged in connection with the pandemic"). At this time, Mr. Gutierrez's current term of imprisonment appears to remain necessary to ensure the safety of the community.

Accordingly, having considered all of these factors as well as those set forth in 18 U.S.C. § 3553(a), the Court concludes that they weigh against immediate release.

## IV.    CONCLUSION

For the reasons explained above, the motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 23rd day of October, 2020.

    /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge